## Commonwealth ex rel. v. Everett et al.

*Francis H. S. Ede*, for plaintiff.

*Everett Kent* and *S. Maxwell Flitter*, for defendants.

PER CURIAM, December 8, 1930.—The petitioners in the above matters were committed to Northampton County prison for nonpayment of *per capita* taxes and county and borough taxes. Petitions were presented for their discharge under the provisions of the Act of June 1, 1915, P. L. 704. It is plain that that act does not apply to the present cases. The title of the act is "An act providing for the discharge of persons arrested or held on process issued

on a judgment obtained in civil actions." In the body of the act there are no words which would apply to the present cases. As these cases were argued very thoroughly, and as our decision is in favor of the defendants, we have decided to overlook the irregularity and treat the cases as if they were presented under the Insolvency Act of June 16, 1836, P. L. 729, which provides "that the jurisdiction of the court may be exercised in the case of a person arrested or detained by virtue of any process issued in any civil suit or proceeding for the recovery of money for damages," etc. The twelfth section of that act is substantially the same as the fourth section of the Act of 1915. Whatever may be the policy of other states with reference to confinement in prison of delinquent taxpayers, Pennsylvania has not departed from her old law. The Act of May 4, 1927, P. L. 712, is an amendment of the twenty-first section of the Act of April 15, 1834, P. L. 509. That section provides as follows: "If any person shall neglect or refuse to make payment of the amount due by him for such tax within thirty days from the time of demand so made, it shall be the duty of the collector aforesaid to levy such amount by distress and sale of the goods and chattels of such delinquent, giving ten days public notice of such sale, by written or printed advertisements; and in case goods and chattels sufficient to satisfy the same with the costs cannot be found such collector shall be authorized to take the body of such delinquent, and convey him to the jail of the proper county, there to remain until the amount of such tax, together with the costs, shall be paid or secured to be paid, or until he shall be otherwise discharged by due course of law." In this connection it will be noted that the legislative intent was to place women on an exact equality with men, for the Act of May 8, 1923, P. L. 169, amended the Act of April 15, 1834, P. L. 509, which exempted females, infants and lunatics from imprisonment by striking out the word "female." That imprisonment for nonpayment of taxes on an arrest by the tax collector is constitutional plainly appears from Den ex dem v. Hoboken Land & Improvement Co., 18 How. 272. The syllabus of that case is: "A distress warrant issued by the solicitor of the treasury under the act of congress passed on the 15th May, 1820, . . . is not inconsistent with the constitution of the United States." It was there held that there is a distinction between claims of government for their taxes and all others, which may be carried out by summary methods of proceeding. Mr. Justice Curtis, in a very interesting historical review, shows that in England, by the common law, the body, lands and goods of the King's debtor were liable to be levied on to obtain payment, and he refers to an early act of Pennsylvania, 1782, as authority for the right of the sovereignty to collect taxes by imprisonment. It has also been decided that the warrant for the arrest of a delinquent taxpayer is civil process: Gordon v. Clifford, 28 N. H. 402; Williams v. Spencer, 5 Johns. (N. Y.) 352; Hubbard v. Mack, 17 Johns. (N. Y.) 127. In the case of John S. Furey, an Insolvent Debtor, 1 Ashmead, 383, the syllabus is: "A party in custody under civil process, in the nature of an execution is entitled to this relief. Thus, a delinquent collector of county rates and levies, arrested and held under a treasurer's warrant, pursuant to the 18th section of the act of 11th April, 1799, is entitled to give bond to the commissioners of the county to appear and make application for the benefit of the insolvent laws; such a proceeding being civil process in the nature of an execution." The briefs of the eminent counsel in that case and the opinion of President Judge King demonstrate clearly that these women were committed under the civil process as understood in the Act of 1836. There is no dispute as to the regularity of the proceedings in this case such as was raised in Com. v. Deuel, 8 Dist. R. 431, or In re Sommer, 12 Dist. R. 688. Nor was

there any question as to the kind of taxes such as was raised in Fulton *v.* Jenks, 9 Pa. C. C. 126. The whole argument was based upon the contention that these women should be discharged. The hearing that is to be had under the fourth section of the Act of 1915, *supra,* is very similar to the hearing that is to be had under the Act of June 16, 1836, P. L. 729. The thirteenth section of that act is as follows: "If upon examination of the petitioner as aforesaid, there shall not arise a strong presumption of fraud, and if the petitioner shall in other respects appear to be entitled to relief. . . ." In passing upon a discharge under the provisions of the Act of 1915, *supra,* the Superior Court held in In re Petition of John Ostrowske, 79 Pa. Superior Ct. 311, as follows: "On a petition to discharge an insolvent debtor under the provisions of the Act of June 1, 1915, P. L. 704, the court may exercise its discretion and discharge the petitioner if it is satisfied that the facts warrant such action.

"It is not necessary that the debtor shall have remained in jail for sixty days before he can obtain his discharge. The defendant may be discharged at any time if he impresses the court by a presentation of the facts as provided by the act. The court may exercise its discretion and consider the character of the testimony which resulted in the judgment, but after sixty days have expired, if the defendant complies with the law he is entitled to his discharge. Before the expiration of sixty days it is a matter of grace, after that it is a matter of right." See, also, Matz *v.* Haug, 80 Pa. Superior Ct. 583. In De Turk *v.* Gackenbach, 96 Pa. Superior Ct. 38, also under the Act of 1915, the syllabus is: "An order dismissing a petition to discharge a defendant arrested on a capias ad satisfaciendum, will be affirmed where the Court below held that the plaintiff was not entitled to a discharge because of his conduct subsequent to the recovery of the verdict against him in an action of trespass for deceit, and the nature of the testimony in that action." Owens's Case, 8 Pa. C. C. 458, was under the Act of June 16, 1836. In that case the late President Judge Pershing refused to discharge an insolvent in the case of a young man who refused to pay a sentence of support for his illegitimate child. Judge Pershing said: "The financial ability, and the duty, of this able-bodied young man, to support his illegitimate offspring, are alike plain. That he prefers to remain in jail, at a loss of $60.00 per month in wages, in a fraudulent attempt to shirk his responsibility, is not to his credit. The Act provides that, if the petitioner for the benefit of the insolvent laws shall satisfy the court that he has not concealed or conveyed to any person whomsoever any part of his estate, effects or credits; if, upon examination of the petitioner, there shall not arise a strong presumption of fraud, and he shall in other respects be entitled to relief, the court shall direct an oath or affirmation to be administered to him, in the form prescribed in the Act, and thereupon, on his making a proper assignment of all his estate, property and effects whatsoever, to a trustee to be named by the court, he may be discharged. See Act of June 16, 1836, §§ 12, 13 and 14. The applicant in this case has failed to satisfy the court that he has brought himself within the provisions of the insolvent law. On the contrary, the court is satisfied that his application is wholly without merit." In Davis's Appeal, 90 Pa. 131, a proceeding to secure the discharge of a party who refused to pay for the support of his wife and child, the late President Judge Meyers said: "A person having little or no property, without the slightest inconvenience to himself, might procure his discharge under the insolvent laws; yet he might be in a position, by reason of his employment, social relations or otherwise, to be able to obtain the required security to comply with the order of the court. Under such circumstances, it seems reasonable that a person ought not to escape per-

formance of his duty to support his wife and children, to prevent which I have no doubt was intended to be accomplished by the Act of 1869. For these reasons, the discharge of Edward H. Davis is withheld. Being of opinion, therefore, that the petitioner is not entitled to his discharge under the insolvent laws of this Commonwealth, we hereby order and decree that the petitioner's application for discharge be dismissed." The Supreme Court affirmed the case on his opinion.

It will thus be seen that the court ought not to permit every delinquent taxpayer who refuses to pay his or her taxes to be discharged as an insolvent simply because he or she may not have property out of which his or her tax can be collected. If he or she is able-bodied, and is in receipt of wages, or if the husband of the woman is in a position where he ought to pay his wife's taxes in return for the work which she does in his household, there is no reason why she should be exempt from the payment of taxes. The law has given women the right to vote, and the great majority of women discharge their duty to help support the government, whether of the state or of the municipality, by paying taxes. In Broad Street Church's Appeal, 165 Pa. 475, Mr. Chief Justice Sterrett approves the following quotation from an opinion of Mr. Justice Brewer of the United States Supreme Court, as follows: "Taxes proper, or general taxes, proceed upon the theory that the existence of government is a necessity; that it cannot continue without means to pay its expenses; that for those means it has the right to compel all citizens and property within its limits to contribute; and that for such contribution it renders no return of special benefit to any property, but only secures to the citizens that general benefit which results from protection to his person and property, and the promotion of those various schemes which have for their object the welfare of all." It is unnecessary to amplify the matter further. In the present cases too little attention was given to testimony tending to bring out the specific ability of these parties to pay the taxes by reason of circumstances other than their own immediate possession of property. In the exercise of our discretion, therefore, we shall insist in future cases, if any arise, on being informed as to these matters. It also ought to be noticed that the municipal authorities have a right to exonerate the tax collector from the collection of taxes where they are satisfied that the party is unable to pay. They are better judges of the individual's circumstances than we are, and parties ought, before applying for the benefit of the insolvent laws, to appear before those authorities and ask to be exonerated from their payment. We apprehend that in the vast majority of cases the expenses incident to proceedings like the present ones will be greater than the amount of the taxes. These petitioners have given security "for their appearance, surrender and compliance with the decree of the court as the court shall deem requisite." That is in accord with section two of the Act of 1915, *supra*. If we dismissed the proceedings because they were not taken under that act, delinquents would have to pay the costs. That provision is in substantial accord with the sixth section of the Act of 1836, *supra*. The costs must be paid by the delinquents under either act, and it is also to be noticed that under both acts the discharge is not equivalent to payment. The debt still remains, and the taxes can be collected if the parties acquire any property.

And now, December 8, 1930, it is ordered, adjudged and decreed that Nora B. Everett, upon payment of the costs of this proceeding in No. 183, November Term, 1930, shall be discharged from arrest and custody, and in default of said payment of costs, she shall forthwith surrender herself to Northampton County prison; and it is further ordered, adjudged and decreed that Anna

320

M. Smith, upon payment of the costs of this proceeding in No. 278, November Term, 1930, shall be discharged from arrest and custody, and in default of said payment of costs, she shall forthwith surrender herself to Northampton County prison.

From Henry D. Maxwell, Easton, Pa.